UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 96-21066
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GENARO AGUILAR MARIN, also known as Marin
Genaro Aguilar; JESUS ALFONSO CORTES-GRANJA,
also known as Jesus Alfonso Cortes; CESAR VALDEZ
RODRIGUEZ; FABIO GUESO ROMERO, also known as
Fabio Romero,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CR-70-3)
_____

September 25, 1998

Before POLITZ, Chief Judge, JONES, and DUHÉ, Circuit Judges.

PER CURIAM:[*]

Appellants Marin, Cortes, Rodriguez, and Romero raise

numerous issues in connection with their convictions, after a jury

trial, for conspiracy and aiding and abetting possession with

intent to distribute more than five kilograms of cocaine. Finding

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

no error in the pretrial, trial, or sentencing proceedings, we affirm.

In March 1996, narcotics officers investigated suspicious activities at a warehouse at 8464 Market Street in Houston and two residences at 3824 Necomen and 10246 Palestine. They conducted careful surveillance of the appellants or their compatriots. They were given permission to search at each of the residences. Their investigation uncovered 369 kilos of cocaine, which had recently been imported from Mexico.

The issues raised by appellants may be discussed one by one. First, the evidence was sufficient to support Romero's, Cortes's, and Rodriguez's convictions. Viewed in the light most favorable to the convictions, "typically, the same evidence will support both a conspiracy and an aiding and abetting conviction." United States v. Salazar, 958 F.2d 1285, 1292 (5th Cir. 1992) (internal citation omitted). To summarize just a bit of the relevant evidence, after apparently participating in a "heat run" to elude law enforcement, Romero arrived at the Newcomen residence and backed the blue van into the garage. More than one person unloaded something from the back of the van and took it inside the house. Romero admitted he was the resident of the house and signed a consent to search form. Officers found false identification for Romero, and they found money wrapped in bundles and a Beretta hand gun in his bedroom. Three hundred bricks of cocaine were found in the house. In Cortes's bedroom the officers found a box containing 101 bricks of the cocaine, a machete, a Colombian passport, and an

airline ticket for travel coinciding with the illegal activity. Rodriguez participated in a suspicious car-swap and wound up at the garage apartment on Palestine, where he motioned the investigating officers toward a bedroom closet containing a stash of five kilos of cocaine. Rodriguez's fingerprints were lifted from the tractor and trailer, found in the warehouse, that had a concealed compartment for transporting the narcotics. From this and other evidence, the jury could infer the defendants' guilt of the charged offenses.

Second, both motions to suppress were correctly denied.[1] Gonzalez had authority as both tenant and resident of his garage apartment on Palestine to consent to agents' searching the bedroom closet. He gave both verbal and written consent. Marin and Rodriguez, who were guests at the apartment and shared the bedroom with Gonzalez, assumed the risk that Gonzalez might permit the search. <u>United States v. Smith</u>, 930 F.2d 1081, 1085 (5th Cir. 1991). Melendez invited the officers into the Newcomen house, and Romero, who said it was his house, gave verbal and written permission to search in Spanish and English. The officers had no reason to question Melendez's authority to invite them inside, and Romero affirmed his consent to their entry by permitting them to stay. <u>United States v. Thomas</u>, 120 F.3d 564, 572 (5th Cir. 1997). Nothing casts doubt on the voluntariness of Romero's consent. <u>United States v. Asibor</u>, 109 F.3d 1023, 1039 (5th Cir. 1997). The

---

[1] In some cases, more than one of the defendants raises the arguments we address. It is unnecessary to be more specific here about the proponent of each issue on appeal.

3

district court did not err in finding that valid permission to enter and search both residences was given.

The district court did not abuse its discretion by altering the composition of the jury panel after it was impanelled and opening statements were presented. In fact, the district court made exactly the change in the composition of the jury panel that the defendants requested. No reversible error and no constitutional error is identified in this train of events.

Contrary to appellants' contention, this circuit has held that the double jeopardy clause is not violated by prosecution for both a conspiracy and aiding and abetting the underlying substantive offense. See United States v. Payan, 992 F.2d 1387, 1392 (5th Cir. 1993).

Likewise, the district court's admission of testimony from DEA Agent Pior about "heat runs" and the method of transporting cocaine from Colombia to the United States was not an abuse of discretion. United States v. Buchanan, 70 F.3d 818, 832 (5th Cir. 1996). Rather than constituting improper drug profile evidence, Agent Pior's opinion testimony explained to the jury the conduct and methods used by Colombians to import and distribute cocaine, and he was well qualified to do so.

Rodriguez asserts two sentencing issues: the determination of the amount of cocaine that constituted conduct, and his alleged lesser role in the offense. Rodriguez contends he should only have been sentenced for the five kilos found in the bedroom closet of the garage apartment. The court attributed to

him the entire 369 kilos found in the course of the warehouse activities. The court's finding was not clearly erroneous, because the court could properly conclude that Rodriguez was responsible for the entire amount of cocaine transported to Houston. United States v. Garcia, 86 F.3d 394, 401 (5th Cir. 1996). Rodriguez was accountable for sentencing purposes for all quantities with which he was directly involved and all foreseeable quantities within the scope of the jointly undertaken criminal activity. The same evidence also dooms Rodriguez's attempt to claim a role reduction for minor participation in the offense.

Cortes challenges the district court's sentence enhancement based on the possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). A knife has been construed to be a dangerous weapon. United States v. Scott, 91 F.3d 1058, 1063-64 (8th Cir. 1996). Further, the evidence shows that it was not "clearly improbable that the weapon was connected with the offense." United States v. Griffith, 118 F.3d 318, 326 (5th Cir. 1997); see also United States v. McDonald, 121 F.3d 7, 10 (1st Cir. 1997) (placing "clearly improbable" burden on defendant); United States v. Ortiz-Granados, 12 F.3d 39, 41 (5th Cir. 1994) (rejecting argument that "clearly improbable" burden should be placed on government). Indeed, the evidence clearly showed that the machete was concealed beneath the pillow on the bed in the same bedroom in which 101 kilos of cocaine were stored in a closet along with Cortes's clothes.

For the foregoing reasons, the judgments of all appellants and sentences of Rodriguez and Cortes are <u>AFFIRMED</u>.

6